1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

BENNIE SAYEE KOFFA,                          CASE NO. C17-1745JLR

11

             Plaintiff,                    ORDER OF DISMISSAL

    v.

12

13

LOW INCOME HOUSING
INSTITUTE, et al.,

14

           Defendants.

15

## I.  INTRODUCTION

16

Before the court is Plaintiff Bennie Sayee Koffa's amended complaint.  (Am.

17

Compl. (Dkt. # 9).)  Mr. Koffa is proceeding *pro se* and *in forma pauperis* ("IFP").  (*See*

18

*id.*; Compl. (Dkt. # 5); IFP Order (Dkt. # 4).)  Under 28 U.S.C. § 1915(e), district courts

19

have authority to review IFP complaints and must dismiss them if "at any time" it is

20

determined that a complaint is frivolous or fails to state a claim upon which relief may be

21

granted.  28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A(b)(1); *Lopez v. Smith*, 203

22

F.3d 1122, 1127 (9th Cir. 2000) (clarifying that § 1915(e) applies to all IFP proceedings, not just those filed by prisoners). The court performed a § 1915(e) review of Mr. Koffa's first complaint in this case and dismissed his action for failure to state a claim. (*See* 1/9/18 Order (Dkt. # 8).) The court has thoroughly reviewed the amended complaint and determines that it continues to fail to state a claim on which relief may be granted. Accordingly, the court DISMISSES Mr. Koffa's complaint without prejudice.

## II. BACKGROUND

Mr. Koffa filed a motion to proceed IFP and a proposed complaint on November 20, 2017. (*See* IFP Mot. (Dkt. # 1).) The same day, Magistrate Judge Brian A. Tsuchida granted the motion with the recommendation that the complaint be reviewed under § 1915(e) before the issuance of a summons. (IFP Order at 1.) On January 9, 2018, the court dismissed Mr. Koffa's complaint pursuant to § 1915(e) for failure to state a claim. (*See* 1/9/18 Order.) First, the court determined that Mr. Koffa provided no facts as to how Defendants Low Income Housing Institute ("LIHI") and Eric Pattin's actions are fairly attributable to the state and thus dismissed Mr. Koffa's 42 U.S.C. § 1983 claims against them. (*Id.* at 4-5.) Second, the court found that Mr. Koffa failed to state any factual allegations against remaining Defendants former Mayor Tim Burgess and Governor Jay Inslee and thus dismissed the § 1983 claims against them as well. (*Id.* at 5.) The court cautioned Mr. Koffa that if he "fail[ed] to file an amended complaint that remedies the aforementioned deficiencies, the court will dismiss his complaint without leave to amend." (*Id.* at 6.)

//

1    Mr. Koffa submitted his amended complaint on January 23, 2018, with several

2  attachments and additional factual allegations.  (*See* Am. Compl.)  Mr. Koffa drops all

3  allegations against former Mayor Burgess and Governor Inslee; instead, he brings suit

4  against LIHI, Mr. Pattin, and the current mayor of Seattle Jenny Durkan (collectively,

5  "Defendants").  (*See id.* at 2.)  Mr. Koffa alleges that Camp Second Chance ("the Camp")

6  is a city-sanctioned homeless encampment administered through contract agreement

7  between the City of Seattle ("the City") and LIHI.  (*Id.* at 5; *id.*, Ex. 1.)  LIHI, in turn,

8  allegedly authorizes the residential Camp Board of Directors ("the Camp Board") to run

9  camp affairs.  (*Id.* at 5.)

10    As in his original complaint, Mr. Koffa's claims arise from various incidents that

11  occurred at the Camp.  (*See id.* at 19-25,[1] Exs. 3, 5-8 (incident reports and emails

12  documenting various events that occurred at the Camp).)  Specifically, Mr. Koffa's

13  amended complaint revolves around how the Camp Board displays favoritism when

14  running the Camp.  (*See id.*)  Through these incidents, Mr. Koffa claims that "LIHI [and]

15  the Camp Board of Directors violated [his] civil rights by discrimination, voilent [sic] and

16  vindictive instincts leading to voluntary evacuation of [the] Camp by [Mr. Koffa]."  (*Id.*

17  at 5.)

18  //

19  //

20  //

21

22
_____

[1] Mr. Koffa submits "Supporting Info" along with his amended complaint.  (*See* Am. Compl. at 19-28.)  The court cites to the CM-ECF generated page number that appears on the upper right-hand corner of the amended complaint to refer to these pages.

1        For instance, Mr. Koffa alleges that William,[2] a camp resident who is presumably

2    the kitchen coordinator, would depart the camp without leaving food, supplies, or keys to

3    the kitchen, leaving the residents "no access to food/supplies until whenever William

4    returned to camp." (*Id.* at 19.)  Mr. Koffa asserts that food and supplies were only

5    accessible to William, the Camp Board, and their family, friends, or supporters.  (*Id.* at

6    20.)  On August 22, 2017, William allegedly ordered Mr. Koffa to clean kitchen

7    equipment used "by younger, irresponsible residents," and Mr. Koffa refused.  (*Id.*, Ex. 3;

8    *see id.* at 20.)  Mr. Koffa insisted that because he was the "most senior resident" at the

9    Camp who has "demonstrated will, ability, and desire to inspire other residents," he

10   should not have to be "a dishwasher/cleaner/janitor for irresponsibility, carelessness, or

11   carefree attitudes."  (*Id.*, Ex. 3 ("To do otherwise is insulting my age, dedication and

12   humility.").)  As a result, Mr. Koffa quit his post in the kitchen.  (*See id.*; *id.* at 20.)

13       Mr. Koffa also raises a long list of instances purportedly revealing favoritism and

14   discrimination in how the Camp Board enforced the Camp rules.  For example, Mr. Koffa

15   alleges that a Camp Board member, Richard,[3] was "often drunk" and "usually disrupted

16   residents['] meetings or engaged [in] violence against fellow campers, without

17   disciplinary action." (*Id.* at 20.)   Although Richard "eventually became disallowed

18   (suspended) from [the] Camp by City of Seattle for drunken violence," Mr. Koffa asserts

19   //

20       [2] Mr. Koffa does not provide a last name for this individual, nor is this individual a
     named defendant in the case.  (*See* Am. Compl.)
21

22       [3] Again, Mr. Koffa does not include Richard's last name or include him as a named
     defendant in this suit.  (*See* Am. Compl.)

1  that Richard "was encouraged or permitted by the Board to reside on [the] Camp for

2  many months—in defiance of city orders." (*Id.*)  Mr. Koffa also asserts that a Camp

3  resident, Eric Davis, was accused of "inappropriate sexual advances and harassments of

4  female residents of the camp" but was shielded by the Camp Board in defiance of city

5  and administrator suspension orders. (*Id.* at 21.)  Similarly, Mr. Koffa alleges that a

6  resident known as "Tip" was suspected of drug abuse and expelled from the Camp, but

7  his family was provided "temporary accommodations" by LIHI and the Camp Board.

8  (*Id.* at 23.)

9  　　　Mr. Koffa alleges that, on August 8, 2017, the residents assigned to security detail

10  had "abandoned their duties," but no disciplinary actions were taken, allegedly because

11  these residents were friends of the Camp Board.[4]  (*See id.* at 21; *id.*, Ex. 5.)  Additionally,

12  Mr. Koffa asserts that in October 2017, infectious disease broke out in the Camp, and the

13  Camp Board "failed to take preventive actions." (*Id.* at 22.)  Mr. Koffa allegedly had to

14  complain to a Customer Service Complaint Investigator for the City, "who took prompt

15  professional actions, thus ensuring [the] safety of residents." (*Id.*)  Moreover, Mr. Koffa

16  claims that despite a limitation on the number of pets allowed per resident, Camp Board

17  members permitted acquaintances to keep "many dogs or cats with access in

18  TV/community room and kitchen areas . . . obviously posing unsanitary conditions to

19  camp residents." (*Id.*)

20

21  　　　[4] Although in Mr. Koffa's supplemental information he states that this incident occurred on August 8, 2017, his attached incident report states that this incident occurred on August 21, 2017. (*Compare* Am. Compl. at 21, *with id.*, Ex. 5.)  It is unclear whether these were two

22  separate events that occurred on two days or whether this refers to the same incident.

1    Mr. Koffa also claims that members of the Camp Board and residents in the Camp

2    were violent against him in an incident that he claims was never investigated, but omits

3    any details about this occurence.[5]  (*Id.* at 24.)  Mr. Koffa therefore decided to leave the

4    Camp and returned only to collect personal items left there.  (*Id.* at 25.)  Upon return, Mr.

5    Koffa alleges that his "tent was ransacked," with many of his personal items damaged or

6    destroyed.  (*Id.*)  Mr. Koffa includes with his amended complaint a list of his damaged

7    property.  (*See id.*, Ex. 8.)[6]

8         Mr. Koffa challenges the "pattern and practi[c]e of inactions on the basis of

9    discrimination by the City of Seattle and [LIHI] . . . following complaints by

10   residents . . . which emboldens the [Camp Board] to discipline residents with

11   discrimination."  (*Id.* at 24.)  Mr. Koffa warns that "encampments and shelters transform

12   into 'death camps' with scant[] or no attention or actions taken to remedy inhumane

13   treatments."  (*Id.* at 26.)  Thus, Mr. Koffa requests that the court "sen[d] a clean,

14   resounding message to Administrators of homeless encampments and public housing

15   institutions to 'do unto others as you would that they do unto you.'"  (*Id.* at 27.)   He also

16   seeks the value of his damaged personal property.  (*Id.* at 5.)

17   //

18   ────────────────────

19   [5] Mr. Koffa had included details regarding a violent incident in his original complaint but
     does not include that description of events here.  (*Compare* Compl. at 6-7, *with* Am. Compl.)  In
     light of Mr. Koffa's *pro se* status, the court recognizes the possibility that this omission was

20   inadvertent.  The court cautions Mr. Koffa that "the general rule is that an amended complaint
     supercedes the original complaint and renders it without legal effect." *Lacey v. Maricopa Cty.*,
     693 F.3d 896, 927 (9th Cir. 2012) (en banc).

21

22   [6] Mr. Koffa labels this exhibit "Annex B" (Am. Compl. at 18), but the court will refer to
     it as an additional exhibit.

ORDER - 6

1      After filing his amended complaint, Mr. Koffa also filed a motion for issuance of a

2 summons.  (*See* Mot. (Dkt. # 14).)  This motion summarizes the claims contained within

3 the amended complaint as "Defamation, Discrimination and Malicious Destruction of

4 Personal Property, Violence and Intimidation."  (*Id.* at 1.)  Mr. Koffa notifies the court

5 that the amended complaint has been served on the Defendants and requests that the court

6 issue a summons.  (*Id.*)

7                       **III.    ANALYSIS**

8      As articulated in the court's previous order, an IFP complaint must contain factual

9 allegations "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*

10 *v. Twombly*, 550 U.S. 544, 555 (2007).  The court need not accept as true a legal

11 conclusion presented as a factual allegation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12 Although the pleading standard announced by Federal Rule of Civil Procedure 8 does not

13 require "detailed factual allegations," it demands more than "an unadorned,

14 the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555);

15 *see* Fed. R. Civ. P. 8(a).  Although "the allegations of [a *pro se* plaintiff's] complaint,

16 'however inartfully pleaded' are held 'to less stringent standards than normal pleadings

17 drafted by lawyers,'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*,

18 404 U.S. 519, 520 (1972)), this does not preclude dismissal where "a liberal construction

19 does not remedy the palpable deficiencies in [the] complaint," *Wallmuller v. Russell*, No.

20 C14-5121RBL-JRC, 2014 WL 2475978, at *2 (W.D. Wash. June 3, 2014).  Again, the

21 court finds that Mr. Koffa's allegations, even liberally construed, fails to meet the

22 //

1 | pleading standard and accordingly dismisses his amended complaint without prejudice

2 | and without leave to amend.

3 | At the outset, it remains doubtful that LIFI or Mr. Pattin's actions are fairly

4 | attributable to the State, as is required for a § 1983 suit. *See Rendell-Baker v. Kohn*, 457

5 | U.S. 830, 838 (1982). "[S]tate action may be found if, though only if, there is such a

6 | close nexus between the State and the challenged action that seemingly private behavior

7 | may be fairly treated as that of the State itself." *Brenwood Acad. v. Tenn. Secondary Sch.*

8 | *Athletic Ass'n*, 531 U.S. 288, 295 (2001). The court appreciates that Mr. Koffa submitted

9 | a letter showing the Camp is a "City-sanctioned encampment" and has contracted with

10 | LIHI to manage the operations of the Camp. (*See* Am. Compl. Ex. 1.) But the letter does

11 | not mention the Camp Board or Mr. Pattin, and it is unclear from the pleadings what level

12 | of involvement, if any, the City has in LIHI's management of the camp. (*See id.*)

13 | But even if the court construes Mr. Koffa's pleadings liberally and assumes that

14 | LIHI and Mr. Pattin are both state actors susceptible to a § 1983 suit, the amended

15 | complaint nonetheless fails to state a claim. "Section 1983 does not create any

16 | substantive rights, but is instead a vehicle by which plaintiffs can bring federal

17 | constitutional and statutory challenges to actions by state and local officials." *Anderson*

18 | *v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Thus, to prevail on his § 1983 claim,

19 | Mr. Koffa must show that a right secured by the Constitution or the laws of the United

20 | States was violated. *See Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

21 | Although Mr. Koffa does not identify what constitutional right or federal law was

22 | //

1   violated here, the court liberally construes his discrimination claim as an alleged violation

2   of the Equal Protection Clause of the Fourteenth Amendment.  (*See* Am. Compl. at 5.)

3         To state a § 1983 claim for violation of the Equal Protection Clause of the

4   Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or

5   purpose to discriminate against the plaintiff based upon membership in a protected class.

6   *Washington v. Davis*, 426 U.S. 229, 239-40 (1976).  Here, Mr. Koffa offers only

7   conclusory statements of a "pattern and practi[c]e of inactions on the basis of

8   discrimination" (*see* Am. Compl. at 24) but provides no factual allegations regarding the

9   intent of the Defendants or his membership in a protected class (*see generally id.*).[7]

10   Indeed, the only group that Mr. Koffa alludes to consists of residents who are not the

11   friends or family of the Camp Board—hardly a protected class.  (*See id.* at 19-23.)   Thus,

12   Mr. Koffa has offered no more than conclusory allegations of discrimination, and his

13   amended complaint must be dismissed.[8]

14         The court reaches the same conclusion for Mr. Koffa's claims against Mayor

15   Durkan.  As explained in its previous order, a supervisory official is liable only if he or

16

---

17   [7] Aside from listing Mr. Pattin as a Camp Board member and a named defendant, Mr. Koffa includes almost no factual allegations as to what actions Mr. Pattin took, let alone Mr. Pattin's mindset.  (*See* Am. Compl. at 21-22, 25.)

18

19   [8] Mr. Koffa does mention his age when describing the kitchen incident where he refused to wash kitchen utensils.  (*See* Am. Compl., Ex. 3.)  To the extent that Mr. Koffa attempts to raise an age discrimination claim under the Age Discrimination in Employment Act of 1967

20   ("ADEA"), 29 U.S.C. § 623(a), he fails to state a claim upon which relief can be granted.  To establish a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate,

21   amongst other things, that he or she was replaced by a substantially younger employee with equal or inferior qualification or discharged under circumstances giving rise to an inference of

22   age discrimination.  *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012). Mr. Koffa pleads no factual allegations to support this element.  (*See* Am. Compl.)

1  she was personally involved in the constitutional deprivation, or if there is a sufficient

2  causal connection between the supervisor's wrongful conduct and the constitutional

3  violation.  *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *Redman v. Cty. of*

4  *San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991).  Again, Mr. Koffa does not allege

5  that Mayor Durkan was personally involved in the various incidents at Camp, nor does he

6  claim that there is any casual connection here.[9]  (*See generally* Am. Compl.)  In fact, the

7  majority of factual allegations that mention the city are positive, such as when the City

8  suspended Richard for drunken violence (*see id.* at 20), suspended and occasionally

9  evicted Eric Davis from the Camp (*id.* at 21), and took "prompt professional actions" in

10  response to a report of an outbreak of infectious disease (*id.* at 22).  Thus, the court must

11  reject Mr. Koffa's conclusory and unadorned statements that the City discriminated

12  against him.  *See Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

13          The court is sympathetic to the challenges that Mr. Koffa faced at the Camp and

14  with the Camp Board.  But Mr. Koffa fails to assert sufficient facts to support his

15  allegation of discrimination in violation of the Constitution.  Moreover, Mr. Koffa's

16  remaining claims, including defamation, violent assault and battery, and property

17  damage, do not independently trigger this court's jurisdiction and would be better

18  addressed in a state court of law.

19

20          [9] The same is true for Mr. Koffa's allegations against LIHI.  Although Mr. Koffa alleges
that LIHI oversees the work of the Camp Board, he does not directly allege that LIHI was
21  involved in the various incidents, nor does he claim that there is some causal connection between
LIHI's supervision and the discrimination suffered.  (*See generally* Am. Compl.)  Instead, he
relies primarily on conclusory statements regarding LIHI's involvement.  (*See id.* at 5 ("LIHI . . .
22  violated Plaintiff's civil rights by discriminatory, voilent [sic] and vindictive instincts[.]").)

1         Consequently, the court dismisses Mr. Koffa's amended complaint for the same

2   reasons as it dismissed his original complaint and does so without leave to amend. Leave

3   to amend is mandatory for *pro se* plaintiffs unless it is absolutely clear that amendment

4   could not cure the defects. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir.

5   1995) (per curiam). This standard is met here. The court previously warned Mr. Koffa

6   that if he failed to correct the noted deficiencies and meet the required pleading

7   standards, the court would dismiss Mr. Koffa's complaint without leave to amend.

8   (1/9/18 Order at 6.) Despite attaching several exhibits and supplementing the complaint

9   with almost ten additional pages of factual allegations, Mr. Koffa has not corrected the

10  deficiencies identified in the court's prior order. (*See generally* Am. Compl.)

11  Accordingly, the court dismisses his complaint without leave to amend and without

12  prejudice and denies his pending motion for issuance of a summons.

13  **IV.    CONCLUSION**

14        Mr. Koffa's amended complaint is DISMISSED without leave to amend and

15  without prejudice (Dkt. # 9). The court also DENIES his motion for issuance of a

16  summons (Dkt. # 14).

17        Dated this 2nd day of March, 2018.

18

19                                                  _____

20                                                  JAMES L. ROBART
                                                United States District Judge

21

22